(Attorneys not given.)

### U. S. DISTRICT COURTS
#### No. 451
#### WELLS In re

U. S. Dist. Court, S. D. Ohio, W. D.
No. 6475. Decided April 12, 1924

127. BANKRUPTCY—Partnership may be such an entity as to justify bankruptcy against it irrespective of any adjudication of bankruptcy against any individual member.

2. 8088 GC. et seq. and U. S. Bankruptcy Act, providing for continuation of partnership by surviving partner, one can be adjudicated a bankrupt after death of a member.

3. Ordinarily partners cannot prove debts due them individually in administration of partnership estate.

(Continued on Page 477)

# STATE SUPREME COURT
### NEW CASES, PROCEEDINGS AND DECISIONS

## OHIO SUPREME COURT

**The following is the most complete and accurate List of Cases and Decisions Filed and Disposed of in this Court.**

**It is the Only List in which cases are Indexed and Annotated by back references to the place where they have formerly appeared, thus giving their complete record.**

## WEEKLY REPORT OF SUPREME COURT PROCEEDINGS

## NEW CASES DOCKETED

### INDEX TO CASES
#### Cases Decided

Blosser v. Enderlain_____ 18709
Burkhart v. Wayne Coal Co._____ 18707
Davis v. Lind_____ 18717
East Cleveland (City) v. Cleve. Ry.____ 18718
Fisher Bros. Co. v. Brown_____ 18693
Fulner v. Kempton Coal Co._____ 18708
Fisher Body O. Co. v. Smolinsky_____ 18713
Indust. Com. v. Burchard_____ 18711
Lentz v. Lentz_____ 18706
Ohio Cas. Ins. Co. v. Lang_____ 18715
Ohio R. & W. Ry. Co. v. P. U. C._____ 18716
State v. Kithcart_____ 18710
Telling-Belle V. Co. v. Packer Co._____ 18694
Un. Trust Co. v. First Nat. Bank_____ 18712
Van Wert Nat. Bank v. Stemen_____ 18695
Wrikerman v. Clev. Prov. Co._____ 18714

### July 9

18693—The Fisher Bros. Co. v. Thad. H. Brown, Secretary of State; error to Franklin Appeals. Wm. L. Day and Jno. H. Price, Cleveland, and Smith W. Bennett, Columbus, for plaintiff; C. C. Crabbe and H. H. Griswold, Columbus, for defendant.

18694—Telling-Belle Vernon Co. and Harry H. Packer Co. v. Sands Realty Co.; motion to direct Cuyahoga Appeals to certify record. Jos. C. Breitenstein, Cleveland, for plaintiffs; Boyd, Cannon, Brooks & Wickham, Cleveland, for defendant.

18695—Van Wert National Bank v. Charles Stemen; motion to direct Van Wert Appeals to certify record. J. S. Brumback, Toledo, for plaintiff; MacKenzie & Weadock and MacKenzie & Landis, Lima, for defendant.

### July 17

18706—John J. Lentz v. Alta F. Lentz; motion to direct the Franklin Appeals to certify record. J. D. Karns and Williams, Sinks & Williams, Columbus, for plaintiff; C. M. Addison, Columbus, for defendant.

18707—Benjamin F. Burkhart v. The Wayne Coal Co., Inc.; motion to direct Jefferson Appeals to certify record. Gardner & Bigger, Steubenville, for plaintiff; W. R. Alban, Steubenville, for defendant.

18708—Albert C. Fulner v. The Kempton Coal Co.; motion to direct Summit Appeals to certify record. C. G. Roetzel, Akron, for plaintiff; Herberich, Burroughs & Bailey, Akron, for defendant.

18709—Peter J. Blosser v. Richard Enderlein; motion to direct Ross Appeals to certify record. J. P. Phillips, Chillicothe, for plaintiff; W. W. Boulger, Chillicothe, for defendant.

### July 18

18710—State of Ohio v. J. A. Kithcart; motion for leave to file bill of exception to Belmont Common Pleas. H. W. Mitchell, Pros. Atty., St. Clairsville, for plaintiff.

18711—Industrial Commission of Ohio v. Marie D. Burchard; motion to direct Hamilton Appeals to certify record. C. C. Crabbe, Atty. Gen., Columbus, and Chas. W. Baker, Jr., Cincinnati, for plaintiff; A. H. Leeper, Cincinnati for defendant.

18712—Union Trust Co. v. First National Bank of Birmingham; motion to direct Cuyahoga Appeals to certify record. M. B. and H. H. Johnson, Cleveland, for plaintiff; Cooke, McGowen, Foote, Bushnell & Burgess, Cleveland, for defendant.

18713—Fisher Body Ohio Co. v. Stanley Smolinsky; motion to direct Cuyahoga Appeals to certify record. Tolles, Hogsett, Ginn & Morley, Cleveland, for plaintiff; Day & Day, Cleveland, for defendant.

18714—W. L. Wrikerman v. Cleveland Provision Co.; motion to direct Cuyahoga Appeals to certify record. Bernsteen & Bernsteen, Cleveland, for plaintiff; Dustin, McKeehan, Merrick, Arter & Stewart, Cleveland, for defendant.

18715—Ohio Casualty Insurance Co. v. Harry Long, Auditor of Butler County, Ohio, and Tax Commission of Ohio; motion to direct Butler Appeals to certify record. Vorys, Sater, Seymour & Pease, Columbus, for plaintiff; P. P. Boli, Pros. Atty., Hamilton, for defendants.

18716—Ohio River & Western R. R. Co. v. Public Utilities Commission of Ohio; error to the Public Utilities Commission. E. R. Meyer, Zanesville, for plaintiff; C. C. Crabbe, Atty. Gen., Columbus, for defendant.

18717—James C. Davis v. Catherine Lind; motion to direct Hamilton Appeals to certify record. Harmon, Colston, Goldsmith & Hoadley, Cincinnati, for plaintiff; Littleford & Ballard, Cincinnati, for defendant.

### July 21

18718—City of East Cleveland v. Cleveland Railway Co.; motion to direct Cuyahoga Appeals to certify record. E. A. Benyon, East Cleveland, for plaintiff; Squire, Sanders & Dempsey, Cleveland, for defendant.

# Weekly Abstract Of Pending Cases

The following statements were prepared by our editors from the recitals appearing in the papers filed in the Supreme Court, or they have been written and sent us by the attorney or attorneys bringing the case.

---

No. 471

WEIRTON STEEL CO. v. FIRST NAT. BNK.

No. 18671. Supreme Court of Ohio
Pending Case

On motion to certify record. Error to the Court of Appeals of Ross County.

126. BANKS AND BANKING—Right of bank to appropriate a customer's deposits to pay debt due it.

The issues submitted in this case involve three questions of law, as follows:

1. Where the usual relationship of depositor and borrower exists between a bank and one of its customers, has the bank a right upon the insolvency of the customer to off-set afainst the latter's deposit his matured indebtedness to the bank, where the deposit contains monies belonging to a third person, in the absence of knowledge on the part of the bank of the true ownership of the fund?

2. Where a deposit is made in a bank for a special purpose or under a special agreement, can the bank rightfully appropriate the deposit to discharge the depositor's individual indebtedness to the bank?

3. A conflict of opinions between the Ross Court of Appeals in the instant case and the 6th Ohio Circuit Court in the case of Gibson-burg Banking Co. v. Wakeman Banking Co., 20th O. C. C. R. 591.

The first issue was decided in the affirmative, but by a divided court.

The second issue was likewise decided by a divided court first in favor of the plaintiff in error and upon rehearing, against it.

The third issue is sufficiently set forth above, and was not formally considered by the Court of Appeals as appears from its opinion.

The facts in this case are that early in 1922 the Sears & Nicholas Canning Co. became indebted to the Weirton Steel Co., $25,000, on a promissory note, and pledged as security certain commodities manufactured by it to be sold by it as agent of the Steel Co., and the proceeds remitted to the Steel Co. by it.

The Canning Co. sold some of the pledged property, collected the proceeds and deposited the same to its own credit with other moneys belonging to it, with the bank, its regular depositary, and immediately sent checks therefor to the Steel Co. The Canning Co. was, soon thereafter, placed in the hands of a receiver. Prior to the presentation of the checks amounting to about $1,800, the bank charged to the Canning Co.'s account, certain promissory notes held by it against the Canning Co., thereby practically wiping out the account. At the time the checks were drawn, it had ample funds on deposit to pay them, and its balance did not thereafter fall below the amount of the checks.

The Common Pleas, at the close of the plaintiff's testimony, directed the jury to bring in a verdict in favor of the bank, which it did and judgment was entered in its favor. From this judgment the Steel Company prosecuted error to the Ross Court of Appeals, and that court reversed the Common Pleas, for the reason that certain evidence which the plaintiff below endeavored to introduce at the trial was excluded. The court also decided that a bank had a right to off-set a debt against a deposit, even though the deposit contains the money of a third party, if this latter fact is unknown to the bank.

Upon rehearing, the Court of Appeals reversed itself on the question of the exclusion of evidence, but, two to one, decided against the Steel Co. and entered final judgment in favor of the bank.

Attorneys — Williams, Sinks & Williams, Columbus, and Walter Boulger, Chillicothe, for Steel Co.; Wilby H. Hyde, Chillicothe, for defendant.

---

No. 452

STATE ex v. WEED

No. 18574. Ohio Supreme Court

On motion to direct Green Appeals to certify. 2 Abs. 338. Docketed May 8, 1924.

747. MANDAMUS—To compel payment for support of minor dependent children.

The above entitled action was one in mandamus, seeking to compel the County Auditor of Greene county to issue and deliver to relator his warrant upon the Treasurer of Greene county, in the sum of $6,740.30, with interest at the rate of six per cent per annum, on statements duly rendered to the auditor by the Board of State Charities; said statements being for board, clothing, personal necessities, etc., furnished to dependent minor children commmitted to the custody of the State Board of Charities by the Juvenile Court of Greene county, under Section 1352-3 GC. The case is one of the same character to be found in the report of State ex rel Price v. Huwe, 103 OS. 546 and 105 OS. 304. The nature of the defense is not known.

Attorneys—C. C. Crabbe, Atty. Gen., and W. E. Benoy, Columbus, for State.

---

No. 472

NEFFLE v. CLEVE., SAN. BREW. CO.

No. 18668. Ohio Supreme Court, Pending Case

On motion to direct Court of Appeals of Cuyahoga County to certify record.

## STATE SUPREME COURT —Continued

**707. LEASES—Liability of owner to a sub-lessee for injuries to a tenant and for repairs.**

The error complained of in this case is the direction of a verdict in favor of the defendant by the trial court, in a personal injury damage case.

There are two questions submitted—first, the liability of an owner of premises to a sub-lessee of a tenant for injuries due to defective condition of the premises which the owner in the lease agreed to keep in repair, and, second, the liability of the owner for repairs so negligently made as to cause injury to an occupant of part of the premises.

As to the first question the court is asked, as in Neckel v. Fox, decided by the Supreme Court April 14, 1924, to clarify the rule as deduced from Burdick v. Cheadle, 26 OS. 393; Shindelback v. Moon, 32 OS. 264, and Stackhouse v. Close, 83 OS. 339.

As to the second question, the plaintiff relies upon the line of authorities found in Hyman v. Barret, 224 NY. 436, as annotated in 18 NY. CA. 190, 197, and Ruff Drug Co. v. Western Iowa Co. as annotated in 15 ALR. 962, the question not having been decided by the Ohio courts.

The action was for personal injuries received by Neffle when an outside stairway to her living-rooms gave way and precipitated her to the cement walk below. The building was owned by the Brewing Co. and was under lease from month to month, or at will, to Louis Voss, who sublet rooms in the second story, reached only by this stairway, and both the owner of the building and Voss were sued in the action. The court directed a verdict in favor of the Brewing Co., and the case against Voss was continued on his motion and is still pending.

The evidence tended to show that at the time the Brewing Co., leased the entire premises to Louis Voss, it agreed to make all the outside repairs, said Voss, however, to make all inside repairs. It was further in evidence, that at the time of the lease the owner's attention was particularly called to this insecure stairway, and it not only promised to repair it, but sent men to make the repairs, who did so by driving only two or more nails into the rotten sill of the upper platform of the stairs, which nails were all that held the stairs to the house. These nails pulled out and the whole platform fell to the ground, and plaintiff was injured. Further attention to this danger was called two or three days before the accident, promise was made to remedy the condition, but plaintiff was injured before further repairs were made.

Attorneys—Payer, Winch, Marshall & Karsh, Cleveland, for Neffle; Boyd, Cannon, Brooks & Wickham, Cleveland, for Brewing Co.

---

No. 453

HATCHER et al v. NATIONAL COAL CO. No. 18360. Ohio Supreme Court Pending Case

On motion to direct Belmont Appeals to certify record. Docketed, 2 Abs. 115; motion overruled, 2 Abs. 227.

**MINING RIGHT—Under a conveyance of coal vein.**

On and prior to Nov. 3, 1920, the Hatchers were owners of and in possession of certain real estate embracing about 223 acres, excepting the No. Eight or Pittsburg vein of coal. On that date, they filed a petition in the Belmont Common Pleas charging that the Coal Co. unlawfully entered upon said real estate with teams, men and material; built roads over and across the same; made large excavations; constructed fills and cuts, for the purpose of building a railroad and deposited thereon several tons of earth, stone and debris. It further charged that by reason of the unlawful acts of the aforesaid, they have been deprived of the use of the land and a large part of the farm had been wholly destroyed for farming or other purposes. They pray for an order of restraining the Coal Co. from the acts aforesaid, and for damages of $10,000.

The Coal Co. filed an answer setting up that the ancestor of the Hatchers, July 10, 1917, conveyed to it, by deed of general warranty, the No. Eight vein of coal under said land together with the mining rights, and also the right to purchase at any time, so much of said land that may be necessary for railroad, mining, manufacturing, and marketing the coal at the price of $100 per acre, upon receipt of which deed was to be delivered. The Coal Co. also filed a motion to dissolve the temporary restraining order granted in the action, which was heard upon the papers and evidence in the case in open court, and thereupon the court dissolved the injunction and, upon hearing, the jury found in favor of the Coal Co. Thereupon the Hatchers appealed the case, and it was again heard in the Court of Appeals and decided in favor of the Coal Co.

The Coal Co. does not claim that the right to use and occupy the surface of the farm is implied from the ownership coal, but claim that the mining rights granted to it by the deed conveying the coal, assures them of the right to occupy such part of the surface overlying the vein of coal as to it seems necessary for digging, mining and ventilating the mine under the stipulation of the deed granting it the right to purchase of said land at $100 per acre.

The records in the court shows that shortly after the Coal Co. went into possession, and committed the acts charged in the petition, it demanded from the Hatchers about 8 acres, and offered to pay them for it, and afterwards paid the money therefor into the court.

The Hatchers claim that the mining right as expressed in the deed is too indefinite as to time and place, there being no description of the premises certain enough to enable one to identify them, and also that the contract embraced in the mining rights is violative of the rule against perpeuties, and is no more or less than an option to purchase, creating a future interest depending upon a contingency.

Attorneys—Thornberg & Lewis, and A. M. Kennon, St. Clairsville. for Hatchers; Charles S. Shepherd, Cambridge, for Coal Company.

## CURRENT OHIO COURT of APPEALS CASES
## Weekly Advance Abstract Opinions

No. 454
BAILEY v. WHITMORE
Ohio Appeals, 5th Dist., Knox County
No. 197. Decided Oct. 25, 1923

**45. ADVERSE POSSESSION—Periods of adverse possession of successors in title cannot be tacked when deed does not include land in question.**

HOUCK, J.

Epitomized Opinion
Published Only in Ohio Law Abstract

The original action in the Knox Common Pleas was brought by Cary Whitmore to enjoin Levada Bailey from using a certain strip of ground and a spring of water thereon. Whitmore had title to the strip containing the spring, but Bailey claimed an easement over the strip and to the use of the spring. Bailey had acquired land in the neighborhood by deed, which did not include the strip in question, and claimed the easement by right of prescription on the ground that he and his predecessors in title had open, continuous, adverse and peaceable possession of the easement for more than 21 years. In the Common Pleas, the injunction was granted as prayed for. Bailey prosecuted error. Held:

The injunction was properly granted. Where an occupant claims title under a deed which does not in fact include the land in dispute, his possession thereof cannot be tacked onto the adverse possession of his grantor, in order to make out a title by prescription. Judgment affirmed.

Attorneys—F. O. Levering and Columbus Ewalt, for Bailey; L. C. Stillwell, for Whitmore; all of Mt. Vernon.

---

No. 455
STATE ex rel SCHOLDER v. SCHOLDER
Ohio Appeals, 9th Dist., Summit County
No. 860. Decided May 8, 1924

**38. ADOPTION—Before Probate Court has jurisdiction to enter an order of, the adoption must have the consent of each parent living at the time of the decree—It may be revoked at any time before the decree has been made.**

WASHBURN, J.

Epitomized Opinion
Published Only in Ohio Law Abstract

This is a proceeding in habeas corpus in which Jean Scholder, the mother, seeks possession of her child, who is now in the custody of Charles Scholder and his wife, uncle and aunt of the child. An adoption proceeding was brought in the Probate Court by the uncle and aunt, under 8024 GC., and on the same day there was filed the written consent of the mother duly acknowledged and witnessed. Some time later, the mother filed in the Probate Court a writing signed by her withdrawing and revoking her consent theretofore given. Still later, the probate judge entered an order overruling the withdrawal of consent and at the same time entered a decree granting the adoption. Held by the Court of Appeals:

Where a proceeding for adoption of a child is by petition under 8024 GC and the facts are such that the written consent of the mother is necessary, the Probate Court is without power to decree it unless the mother at the time of the decree consents in writing to such adoption. It appears that at the time of the entry of the order, the mother not only did not consent, but that she was actually objecting to the order of adoption. Her consent although given is revocable. The order of court was made without jurisdiction and was a nullity. Decree that the mother may have the custody and control of her child, as prayed for in the petition.

Attorneys—Walter Selegue, Akron, for Jean Scholder; C. G. Roetzel, Akron, for Charles Scholder et al.

---

No. 456
SMALLWOOD v. SMALLWOOD STONE CO.
Ohio Appeals, 7th Dist., Jefferson County
Decided ——— 1924

**114. ATTORNEY AND CLIENT—An attorney acting in an emergency and in good faith may make a settlement binding his client without his client's advice and consent.**

ROBERTS, J.

Epitomized Opinion
Published Only in Ohio Law Abstract

In a previous action in which the parties to this action were defendant, a settlement was effected between the attorneys for the defendant and the plaintiff in the sum of $10,000. Smallwood having paid that judgment now brings this action to recover $5,000, which he claims was paid for the benefit of the Stone Company. At the time the settlement was effected no persons in authority in the Stone Company were present and communication could not be made with them. The defense to this action is that the attorney did not have the authority to make the settlement without the client's consent. In the Court of Common Pleas a verdict for the defendant was directed.

## STATE COURT OF APPEALS—Continued

Upon error, the Court of Appeals reversed the decision, holding:

1. A client is bound by a settlement made by his attorney in his absence, when the attorney is acting in an emergency and believes that he is representing the best interest of his client.

(Attorneys not given.)

---

### No. 457
### GETZ v. WILKINS-LEONARD CO.

Ohio Appeals, 7th Dist., Mahoning Co.
March 14, 1924

297. CONTRACTS—Contract to perform draying and hauing held to be of a personal nature terminating with the death of the contracting party.

ROBERTS, J.
Epitomized Opinion·
Published Only in Ohio Law Abstract

Original action in the Mahoning Common Pleas wherein Daisy Getz, as administratrix of her deceased husband, James Getz, was plaintiff and the Wilkins-Leonard Hardware Co. was defendant. Getz had, two years before, entered into a written contract with the Hardware Co. to do the hauling and draying for the company. After the death of James, his wife as administratrix offered to and demanded the right of proceeding with the performance of the contract. The company refused to permit her to continue its performance and she brought this action for damages. After the jury was impanelled and before the introduction of any evidence, on motion the Common Pleas directed a verdict for the Hardware Co. She prosecuted error.

The Court of Appeals held the contract to be one of a personal nature. Otherwise the company would be deprived of the right to determine who its employe might be. He may have been selected because of his known efficiency and experience. The contract provided that he should be wholly responsible for the losses. The company cannot be compelled to depend upon the responsibility of some other person. Furthermore, under the law of Ohio, there would be no liability on the part of the estate in the carrying on of the business after the death of the decedent. An executor or administrator is not permitted to carry on the business of a decedent without an express order of the Probate Court. The petitioner did not set forth a cause of action and the action of the Common Pleas in directing a verdict is affirmed.

Attorneys—Kenealey & Metcalf, for Getz; McKain & Ohl, for Hardware Co.; all of Youngstown.

---

### No. 458
### MASTERS & MULLEN CO. vs. BOARD
### OF EDUCATION

Ohio Appeals, 8th Dist., Cuyahoga County
No. 4935.  Decided March 3, 1924

297. CONTRACTS—Waiver held to exist under terms of contract, as to right to sue.

For Pending Case, Supreme Court, see 2 Abs. 277.

MIDDLETON, P. J.
Epitomized Opinion
Published Only in Ohio Law Abstract

This was an action by the Construction Company against the Board of Education for damages for breach of contract. The Construction Company claimed that delay in the work was due to the fault of the Board of Education. The Board of Education in its second defense set up a certain provision of the contract which provided: "Claims by the party of the first part for damages, by reason of any delay on the part of the Board or its agents, will not be allowed, and any such delay shall work a corresponding extension of the time for the completion of the contract." The Construction Company claimed that the clause was inconsisteht with other clauses of the contract and was without consideration. The judgment was rendered for the defendant, whereupon plaintiff prosecuted error. In sustaining the judgment of the lower court, the Court of Appeals held:

1. Under the provisions of this contract the plaintiff expressly waived its right to sue and recover damages for any delay.

Attorneys—Griswold, Greene, Palmer & Hadden, for Construction Company; Carl Shuler, for Board of Education; all of Cleveland.

---

### No. 459
### LAWS CONST. CO. v. SZABADSAG PTG.
### & PUB. CO.

Ohio Appeals, 8th Dist., Cuyahoga County
No. 4939.  Decided April 18, 1924

297. CONTRACTS—Verdict held not manifestly against weight of evidence.

PER CURIAM.
Epitomized Opinions
Published Only in Ohio Law Abstract

The Szabadsag Prinitng & Pub. Co. sued the Laws Construction Co. in the Municipal Court of Cleveland for $500 for advertising under a contract with the Laws Construction Company. The contract was made by the younger Laws.

After the elder Laws wrote a letter to the plaintiff confirming the contract, but he later wrote complaining about the price. The latter complaint, however, was made after most of the work on the advertisement had been done. Judgment was rendered in favor of the plaintiff, whereupon defendant prosecuted error. In sustaining the judgment of the lower court, the Court of Appeals held:

1. The evidence preponderated safely in favor of the Szabadzag Ptg. & Pub. Co. and, therefore, the judgment was not manifestly against the weight of the evidence.

Attorneys—A. A. Neiger, for Laws Co.; Mills, Knight & Miller, for Szabadzag Co.; all of Cleveland.

---

## No. 460
## KATZ v. U. S. LLOYDS

Ohio Appeals, 8th Dist., Cuyahoga County
No. 4950. Decided April 11, 1924

For Pending Cases, Supreme Court, see 2 Abs., 391.

647. INSURANCE—Insurance company liable in case of theft of car by a casual employe.

LEVINE, J.                    Epitomized Opinion

Published Only in Ohio Law Abstract

Katz engaged Wiggins to wash and polish his automobile in Katz's garage. Before starting any work on the car, Wiggins drove it away without the owner's consent and while so driving wrecked the car. Katz brought this action against the insurance company under a policy by which he was insured against theft. The policy contained a provision excepting theft by any person in the assured's service or employment, whether such theft occurred during the hours of such service or employment or not. The Cleveland Municipal Court at the trial directed a verdict in favor of the insurance company. The Court of Appeals reversed the judgment and remanded the case, holding:

1. There was some evidence tending to show that Wiggins was not in Katz's employment at the time he drove the machine away, and also some evidence that he drove the machine away with fraudulent intention of depriving the owner of it. The trial court exceeded its power in withdrawing the questions from the jury and deciding questions of fact as if they were questions of law.

Attorneys—Gentsch, Rawson & Kavanagh, for Katz; Quigley & Byrnes, for United States Lloyds; all of Cleveland.

## No. 461
## YOUNG v. SNOW

Ohio Appeals, 5th Dist., Knox County
No. 185. Decided Oct. 25, 1923

1245. VERDICT—Compromise verdict will be sustained by reviewing court when there is no evidence of passion or prejudice or wanton wrong.

HOUCK, J.                    Epitomized Opinion

Published Only in Ohio Law Abstract

Original action in the Knox Common Pleas where Snow sued Young for $840.15 due for installing a heating plant in Young's garage. Young filed a complete denial to the petition and also a counter claim alleging that Snow installed a heating plant, but it was so faulty in construction that Young was compelled to re-build his garage to secure proper radiation and claiming damages of $600. Snow replied that the counterclaim concerned a former installation at the completion of which a new and second contract was made whereby Young employed Snow to rebuild the heating plant and this second work of construction was the foundation of this suit. The jury returned a verdict for Snow for $401.59, and judgment being rendered thereon, Young prosecuted error contending, among other things, that the verdict was not responsive to the evidence and that Snow was entitled to recover the full amount sued for or not at all. Held by the Court of Appeals:

The verdict was evidently a compromise verdict, yet in the light of the pleadings and the facts and the sharp conflict of testimony in the case, this court is unable to say that the jury was wrong. There is no evidence of passion, or prejudice or of wanton wrong and the judgment is affirmed.

Attorneys—B. E. Sapp and Robert L. Carr, for Young; F. O. Levering, for Snow; all of Mt. Vernon.

---

## No. 462
## COBLENZ v. SAVILLE et al

Ohio Appeals, 2nd Dist., Montgomery County
No. 399. Decided Feb. 5, 1924

1261. WATER AND WATER COURSES— Diversion of water from its natural course, causing it to flow over land of another, is a nuisance, action for which may be maintained without showing actual damages.

BY THE COURT.                    Epitomized Opinion

Published Only in Ohio Law Abstract

Plaintiff, Lizzie S. Coblenz, alleges that defendants have constructed a dam across a ditch located upon the farm of defendants, and have dug a ditch from the side of the dam to the line fence between the farms of plaintiff

## STATE COURT OF APPEALS—Continued

and defendant, causing the water to flow to the line fence and over upon her lands. She asks for an injunction to restrain the maintenance of the dam and damages for $500.

Defendant, Mary Graham, answered denying many allegations of the petition and by cross-petition seeks damages against plaintiff for injury to their premises by reason of the plaintiff obstructing the natural flow of the water from their said premises.

Said defendant further asks that plaintiff be enjoined from the commission of the unlawful acts recited in detail in the cross-petition and for damages of $1,000.

The defendants, Charles G. and William E. Saville, for answer, join in the prayer of Graham, in her cross-petition to the extent that they have any interest in the said premises. The lower court enjoined the defendants from maintaining the dam or levee in question and from causing the water to be thrown therefrom upon the plaintiff's premises and also awarded the plaintiff nominal damages in the sum of $1. From such judgment an appeal was taken to the Court of Appeals, which held that the legal proposition involved in this case is controlled by the decision of Tootle v. Clifton, 22 OS. 247, that where the water of another is prevented from flowing in its natural course, and caused to flow off in a different direction, over the land of the latter, it is a nuisance for which action may be maintained without showing any actual damage and for which nominal damages, at least, may be recovered.

The testimony is in some respects conflicting, but when the entire record is considered it establishes the right of the plaintiff to an injunction such as was allowed by the lower court. The decree in this court is the same as in the lower court.

Attorneys—Allaman, Funkhouser & Murr, for Coblenz; W. S. Rhotehamel, A. C. McDonald, for defendants; all of Dayton.

---

## COMMON PLEAS

### No. 463

### STATE v. PETERS

Ohio Common Pleas, Portage County

No. 2068. Decided ——— 1924

233. CRIMINAL LAW—(1) Demurrer sustained to indictment, under 17-1 GC., charging city official with employing labor for more than 48 hours a week in a city waterworks plant—Sec. 17-1 held not to apply to work in said plant.

2. Sec. 17-1 GC. forbidding one to "require" or "permit" labor on public work for more than 48 hours a week held to provide for two offenses, and indictment for both objectionable for duplicity.

COLE, J.                    Epitomized Opinion
Published Only in Ohio Law Abstract

The Grand Jury returned an indictment against the defendant, W. F. Peters, then being the director of public service of the city of Akron, whose duty it was to direct the services of workmen engaged in a public work, namely, the waterworks plant of the city of Akron, located in Portage county, charging that he "did unlawfully require and permit a workman to labor on said public work during a period of more than 48 hours in one calendar week."

To this indictment defendant filed a general demurrer contending (1) that the use of the words "require" and "permit" constituted duplicity, that defendant should have been charged with only one and not both offenses; (2) that the indictment failed to aver that the city of Akron was a municipal corporation, for and on whose account the services of the workman were required; (3) that the service of a workman in a waterworks plant is not a public work and that if 17-1 GC. on which this indictment was based, applies to waterworks plants, it violates the 14th amendment of the U. S. Constitution by depriving a person of property without due process of law.   Held:

1. Sec. 17-1 GC. provides for two separate offenses, one to "require" and the other to "permit" an employe to work more than 48 hours a week. That being true, the indictment is open to the objection of duplicity. On that ground, the demurrer is sustained.

2. The court will take judicial notice that there is a municipal corporation in the state called Akron. Since the city itself is not charged with anything, the words used are merely descriptive and are sufficient. On this point, the demurrer is overruled.

3. Provisions in state constitutions and statutes limiting the number of hours of labor of state employes when engaged in purely governmental enterprises are constitutional. The operation of a waterworks is of a proprietory nature. See 109 OS. at 160. 17-1 GC. does not specifically declare its intent to apply to proprietory matters. Hence it may be presumed that it was intended to apply to purely governmental matters only. Therefore the statute has no application to work of the kind involved in this case and for that reason the demurrer as to this contention is sustained.

Attorneys—C. C. Crabbe, Atty. Gen., Columbus. A. L. Heisler, Pros. Atty., Akron, Arthur H. Weicks, Akron, special counsel, for State; H. M. Hagelbarger; Director of Law, Akron, for Peters.

## No. 464
### HEUER v. HUWE, Treas.

Common Pleas, Hamilton County
No. 180089. Feb. 23, 1924

**480. EVIDENCE—Judgment of conviction in a criminal proceeding is inadmissible, in a later civil action. But a plea of guilty in the former is admissible in the latter.**

MATTHEWS, J.          Epitomized Opinion
Published Only in Ohio Law Abstract

Action brought in the Summit Common Pleas by William Heuer, for an injunction to restrain Louis J. Huwe, County Treasurer, and others from collecting a tax for trafficking in intoxicating liquors. The evidence disclosed that Heuer was found guilty in the Akron Municipal Court of having intoxicating liquor in his possession and that he was charged in the Meyor's Court with keeping a place where intoxicating liquors were unlawfully sold, to which charge he pleaded guilty and was fined. The plaintiff objected to the competency of the record of the Mayor's Court. The plaintiff himself testified that he never conducted the business of trafficking in intoxicating liquor and that the plea of guilty was made by his attorney to avoid payment of a higher fine. Held:

The great weight of authority holds that an adjudication in a criminal case is inadmissible in a subsequent civil acton even between the same parties. Therefore the question whether plaintiff trafficked in intoxicating liquors is not res adjudicata. The plea of guilty is admissible as an admission against interest, but it is entitled to such weight only as the circumstances give it. Here the court is unwilling to give such an unsworn stateme greater weight than the plaintiff's sworn testimony or to hold that it destroys plaintiff's credibility as a witness. The preponderance of the evidence is in favor of plaintiff. Injunction is made permanent.

Attorneys—Galvin & Bauer, for Heuer; Sylvester Hickey, for Huwe; all of Akron.

## SUPERIOR COURT
### No. 465
### MARSCH v. CINCINNATI (City)

Cincinnati Superior Court
No. 5896, 1924

**941. PRACTICE AND PROCEDURE—A request for an excessive number of special charges, such as will stop the progress of the trial, will be refused as an abuse of the privilege.**

MARX, J.          Epitomized Opinion
Published Only in Ohio Law Abstract

Marsch recovered a verdict for $750 for a sprained ankle received in a fall on a defective crossing. There was evidence of a second injury and the plaintiff was permitted to exhibit her ankle to the jury. The defendant requested twenty-one special charges be given to the jury. Some of the charges were long and some of them were asked in the alternative. The court refused all of the charges as an abuse of the privilege granted by the statute. In overruling the motion for a new trial the court held:

1. That the damages were not excessive and were not increased by improper evidence concerning a second injury. That there was nothing improper in permitting the plaintiff to exhibit her ankle to the jury, as it was the best evidence of its actual condition.

2. That where the number of requests to charge the jury is so large as to evidence an intention to defeat the purpose of the statute, rather than an intention to conform to its purpose, all of the charges will be denied.

Attorneys—Nicholas Klein, for Marsch; Dennis J. Ryan, for City; both of Cincinnati.

## No. 466
### SCHACHT MOTOR TR. CO v. CLEVELAND C. C. & ST. L. RY.

Cincinnati Suporior Court
No. 58868, 1924

**923. PLEADINGS—Defense that accident was caused solely by negligence of plaintiff's bailee is good on demurrer.**

MARX, J

In the previous opinion of Feb. 20, 1924, this court held that contributory negligence of a bailee cannot be pleaded as a defense to an action by the bailor for dameges to the thing bailed, except it be by the negligence of a third person. The attention of the court is directed to the fact that although the issue of contributory negligence may be involved in evidence, that where each of the parties charges sole negligence upon the other, the issue of contributory negligence is not raised in the pleading.

A second defense of the answer alleges that the collision was caused "solely" by the negligence of the plaintiff's bailee, and is in effect therefore that the railway was not at fault. For the purposes of the demurrer, statement in the answer that the collision was caused solely by the negligence of plaintiff's bailee and not by negligence of the defendant, must be taken as true, and the answer states a good defense, and the demurrer must be overruled.

Attorneys—Buchwalter, Headley & Smith, for Motor Co.; Harmon, Colston, Goldsmith & Hoadley, for Railway.

## ATTORNEY GENERAL

No. 467

MASSILLON MUNIC. COURT FINES,—
etc, In re

No. 1477. May 16, 1924

801. MUNICIPAL LAW—Money collected by the clerk of the Massillon Municipal Court and paid into the municipal treasury may, by act of council be distributed to the safety, service, and general fund.

CRABBE, Atty. Gen.    Epitomized Opinion.

Where the Massillon Municipal Court Act, 1579-444 GC., provided that the clerk of the court should receive all costs, fines and penalties and pay them into the city treasury, the question whether the fines, costs and penalties so collected and deposited in the city treasury could be distributed between the safety, service, and general fund if the council by ordinance so provided, was submitted to the Attorney General, who held:

2296 GC. permits the council having the legislative power of a municipality to transfer public funds under their supervision from one fund to another or to a new fund. This applies to money which has reached the general fund. It is the opinion of this department that money received from the municipal court may be diverted by the council before it reaches the general fund. 86 OS. 244 so holds of money going to the county treasury and, by analogy, this policy applies to municipalities. It is to be noted that the one exception to this rule exists by virtue of 4607 GC., which procides that fines imposed upon members of the fire department of a municipality shall go to the pension fund.

---

No. 468

CITY SOLICITOR, In re

No. 1446. May 9, 1924

801. MUNICIPAL LAW—City Solicitor is required to prosecute state cases in the mayor's court—He is not required to prosecute them after they pass to higher courts.

CRABBE, ATTY. GEN. Epitomized Opinion.

The questions, whether a city solicitor is required to prosecute state cases in a mayor's court and whether he is requirtd to prosecute them if they go to a higher court, were submitted to the attorney general, who held:

1. By 4306 GC. the solicitor shall be prosecuting attorney of the police or mayor's court. By 4307 GC. the prosecuting attorney of the police or mayor's court shall prosecute all cases brought before such court. By 4527 and 4528 GC. a mayor has jurisdiction in state

cases. Hence it is the duty of the solicitor to prosecute state cases in the mayor's court.

2. By 4307 GC. the solicitor's duties in the mayor's court are the same as those of the prosecuting attorney in so far as they are "applicable thereto." It is believed that this means "applicable to the mayor's court." By 2916 GC. the prosecuting attorney's duties are limited to the probate court, common pleas court, and court of appeals. No duty is placed upon him to prosecute cases before a mayor. Hence it is the duty of the prosecuting attorney and not of the solicitor to prosecute state cases on error in the common pleas and higher courts.

---

No. 469

TEACHERS' CERTIFICATES, In re

No. 1294. Opinion of Attorney General

1065. SCHOOLS—One year certificates should be issued without fee to teachers having one year's normal course.

CRABBE, Atty Gen.    Epitomized Opinion.

The opinion of the attorney general was requested as to whether or not the county boards of school examiners may collect fees from applicants meeting the requirements of Section 7832-2 and to whom normal course teachers' certificates have been theretofore granted without examination. The opinion of the attorney general was as follws:

1. Section 7818 GC. clearly contemplates the taking of an examination by the applicant for a position as school teacher and necessitates the taking of some time and energy on the part of the examiners, for which they are compensated under the provisions of GC. 7834.

2. The issuance of a certificate under 7832-2 GC. does not contemplate either an examination of the applicant or the taking of the time and energy of the members of the board of examiners.

3. A teacher's certificate issued under the provisions of GC. 7832-2 should be issued without the collection of the fee prescribed in 7818 GC.

---

No. 470

CIGARETTE TAX, In re

No. 1476. May 16, 1924

1157. TAXES AND TAXATION—Provision for $50 tax on "each place" where cigarettes are sold construed to mean a place of very narrow limits.

CRABBE, Atty. Gen.    Epitomized Opinion.

Where the questions submitted to the attorney general were whether the Union News

Co., which operates and sells cigarettes at two news stands at the Union Station, in Columbus, one in the waiting room and the other on the platform outside of the waiting room near the entrance gates to trains, would be required to pay a $50 tax for each of the stands or only one $50 tax for both, and whether after applying the required amount of tax for stands, the company might, without paying additional tax, sell cigarettes on trains standing in the station. Held:

5894 GC. provides for a fee of $50 for "each place" where cigarettes are sold. 12680 GC. fines a penalty for not displaying a receipt for such tax "in a conspicuous place in the building, where such business is located." The business carried on by this company on the platform is not in the building where the receipt is displayed. Neither is that of selling on trains in the building. Each of these is a separate "place" and each should pay a separate tax and display a separate receipt.

---

## U. S. DISTRICT COURT

(Continued from Page 467)

4. Partner not estopped from filing petition in bankruptcy by assenting to appointment of receiver in State Court.

HICKENLOOPER, D. J.

Epitomized Opinion

Published Only in Ohio Law Abstract

Albert O. Wells and E. E. Wells were partners. E. E. Wells died Feb. 2, 1924, and on Feb. 19, 1924, Albert O. Wells filed a petition in the Common Pleas for a receiver to administer the property upon dissolution. On the same day, Frances Wells, widow of E. E. Wells, was appointed administratrix of his estate. On Feb. 27, Albert O. Wells filed his petition in voluntary bankruptcy as surviving partner and adjudication was made and trustee appointed. The trustee, in administering the estate, had advertised for sale certain real estate standing in the name of E. E. Wells. The Iron City Savings Bank has filed a motion to dismiss the petition in bankruptcy on the grounds that the court was without jurisdiction to adjudicate a partnership a bankrupt, where one of the partners had died prior to the filing of the petition, and that the surviving partner was estopped from filing a voluntary petition in bankruptcy by the fact that he had theretofore petitioned the State Court for an appointment of a receiver to wind up the partnership affairs. In overruling the motion, the court held:

1. Sec. 8088 GC. et seq. provides the machinery for the conduct of partnership business after the death of one partner, and as a partnership is to be regarded as such an entity as to justify an adjudication of bankruptcy against individual members, the death of a member does not preclude adjudication.

2. While creditors who have assented to a receivership in the State Court may be estopped to file an involuntary petition, the bankrupt himself is not so estopped.

Attorneys—Johnson & Jones, for the motion; O. E. Irish, opposed; all of Ironton.

# Ohio Courts of Appeals

DECIDE AT LEAST

# 1000 CASES A YEAR

THE LAWYER DOES NOT GET
OUTSIDE THE

# Abstract's Advance Opinions

---

To Get Complete Access to and Full Use of All of Them

## CONSULT

# The Current Abstract Digest

This Digest Service is Now Being Extended
And It Will be Issued in

# Monthly Units Cumulated Quarterly

Covering Every Ohio Published Case
On Every Point

---

For Further Particulars see Published Numbers

# Weekly Publication

Of All Matter for This Digest Will be First Made in The Ohio Law Abstract, Without Charge to Its Subscribers

Price, Current Abstract Digest Service Alone, Per Year, $8.00